UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CITY OF GALVESTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-00253 |
| | § | |
| CONSOLIDATED CONCEPTS, INC., *et al*. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

After Hurricane Ike struck Galveston Island in 2008, the City of Galveston received federal funds in order to repair homes and other structures within the City. Consolidated Concepts, Inc. was a general contractor who was awarded contracts in 2011 under this program, and Consolidated Concepts, in turn, then entered into various subcontracts and other relationships to obtain supplies and perform work.

According to the City, it received complaints from several of Consolidated Concepts' subcontractors that they were not being paid, so the City began a practice of instead often issuing checks that were jointly payable to both Consolidated Concepts and one of its subcontractors. However, according to the City, beginning in January 2013, Consolidated Concepts did not negotiate these checks and the checks instead "went stale," leaving the City in possession of $700,684.94.[1]

---

[1] The record contains a list compiled by the City of Galveston, showing 89 checks. The Court notes that, although many of the checks were made payable to Consolidated Concepts and another entity, some appear to be payable only to Consolidated Concepts. Further, there are

After the City received numerous conflicting claims for the money, including notice of a tax lien from the United States, it sought to interplead the funds with the District Clerk of Galveston County, asking the court to determine the proper allocation of the funds. On August 1, 2014, the United States removed the lawsuit to this Court. Dkt. 1.

The Court previously granted summary judgment for the City of Galveston, finding that the City's interpleader was proper and dismissing the City from this case. Dkt. 72. Now pending before the Court are multiple cross-motions for summary judgment or partial summary judgment filed by the following: Ideal Lumber Company (Dkt. 95); Solar Supply, Inc. (Dkt. 96); Elevators of Texas (Dkt. 97)[2]; Texas Bonding Company (Dkt. 98); the United States of America (Dkt. 99); CCI Housing, LLC (Dkt. 101).

## THE CLAIMANTS

**The United States:** The United States claims that it is entitled to all of the interpleaded funds because Internal Revenue Service filed federal tax liens with the Texas Secretary of State in September and October 2013, stating that Consolidated Concepts had failed to pay its unemployment taxes in 2012 as well as its employment taxes for 2 ½ years between the end of 2010 through the beginning of 2013. The United States contends it is entitled to $ 1,164,841.56—all of the interpleaded funds.

---

discrepancies between the cumulative final amount of the checks listed and the amount interpleaded by the City.
[2] Two other Defendants, Galveston Wholesale Building Materials and Murley Leveling and Moving, have also joined in Elevators' motion. Dkt. 104.

**The Surety:** American Contractors Indemnity Company d/b/a Texas Bonding Company ("Texas Bonding") alleges that it into surety agreements with Consolidated Concepts and its owners, issuing performance and payment bonds on behalf of Consolidated Concepts in connection with multiple construction projects in the States of Texas and Arizona. A number of these bonds were issued for Consolidated Concepts' projects in Galveston. Consolidated Concepts' owners executed an indemnity agreement with Texas Bonding on April 19, 2011, and Texas Bonding filed notice of that indemnity agreement via a UCC-1 instrument filed with the Texas Secretary of State on February 28, 2012. Texas Bonding alleges that it has suffered over $1,000,000 in losses on the bonds it issued to Consolidated Concepts, and it therefore argues that it is entitled to all of the interpleaded funds.

**The Lender/Judgment Creditor:** CCI Housing argues it lent Consolidated Concepts advance funds to pay for "costs associated with the Galveston Contracts". In exchange for $875,000, Consolidated Concepts signed a Promissory Note on June 27, 2011, amended January 13, 2012, and a Security Agreement granting CCI Housing a security interest in its "accounts receivable, contract rights, and compensation" from the Galveston work. Consolidated Concepts also signed a Settlement Agreement in favor of CCI Housing in January 2012, agreeing that it owed CCI Housing an additional $409,024.69. CCI Housing filed UCC-1 Financing Statements for these debts in December 2011 and August 2012 with the Texas Secretary of State's Office.

After Consolidated Concepts failed to pay the amounts owed, CCI Housing initiated an arbitration proceeding by filing suit in state court. At arbitration in July 2013,

CCI Housing was awarded $ 1,284,024.69. This award was entered as a final judgment in District Court in Harris County, Texas on October 14, 2013.

Accordingly, CCI Housing now contends that it is entitled to receive at least $305,656.48 of the interpleaded funds.

**The Subcontractors and Materialmen:** Ideal Lumber Company, Solar Supply, and Elevators of Texas are subcontractors and materialmen who allege that they are also each entitled to some part of the interpleaded funds under Section 162 of the Texas Property Code, the Texas Construction Trust Fund Act.

## APPLICABLE LAW

Summary judgment is appropriate when the movant shows there are no genuine issues of material fact and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when the "evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "When assessing whether a dispute as to any material fact exists, we consider all the evidence in the record but refrain from making credibility determinations or weighing the evidence; instead, we draw all reasonable inferences in favor of the nonmoving party." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362 (5th Cir. 2013) (citation omitted); see also *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (all evidence and factual inferences are viewed "in the light most favorable to the [nonmovant] and all reasonable doubts about the facts are resolved in favor of the [nonmovant]") (citation omitted).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart,* 486 F.3d 112, 119 (5th Cir. 2007). Though courts are to draw all reasonable inferences in favor of the nonmovant, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Instead, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (emphasis in original).

These last principles are significant in this particular case. The motions for summary judgment by all parties are both legally and factually complex, but there are many arguments and contentions that are not supported by direct citations to supporting summary judgment evidence.

## ANALYSIS

As noted, the record in this case is voluminous and each party uses various record excerpts to contend that it is entitled to all, or some, of the interpleaded funds. More importantly, each claimant contends that it has priority over others, devoting a substantial amount of argument and effort to arrive at wholly contradictory results. The Court has carefully considered the arguments asserted at each stage, in each motion, by each party. After reviewing the record, the motions and argument of the parties, and the caselaw, the Court finds that the United States is entitled to recover the interpleaded funds.

Section 6321 of the Internal Revenue Code affords the United States a lien for delinquent taxes upon "all property and rights to property" belonging to the taxpayer, and this lien attaches "at the time the assessment is made". In this case, the parties do not dispute that the United States has a valid tax lien against Consolidated Concepts. Instead, the other claimants contend that the interpleaded funds are not legally the "property" of Consolidated Concepts, and therefore the tax lien should not attach to them. Each of the other claimants—the subcontractors and materialmen, Texas Bonding, and CCI Housing—contend that all or part of the interpleaded funds belong to them, not Consolidated Concepts, for various reasons. The United States responds that these other parties are either incorrect as a matter of law, or that they have failed to bring forth summary judgment evidence to show a genuine dispute of material fact. The Court agrees.

The Supreme Court has held that state law determines whether the taxpayer has property or the right to property to which the tax lien may attach. *See United States v.*

*National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985); *Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Accordingly, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *United States v. Craft,* 535 U.S. 274, 278, 122 S. Ct. 1414, 1420, 152 L. Ed. 2d 437 (2002) (citing *Drye v. United States*, 528 U.S. 49, 58, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)). In this analysis, "[s]tate law determines only which sticks are in a person's bundle. Whether those sticks qualify as 'property' for purposes of the federal tax lien statute is a question of federal law." *Id*. at 278–79 (noting, "In looking to state law, we must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien.").

### A. CCI Housing

CCI Housing contends that it is entitled to priority, over the United States' tax lien, to at least $305,656.48 of the interpleaded funds, because its security interest pre-dates the IRS liens. CCI Housing points to its UCC-1 filings with the Texas Secretary of State on December 20, 2011 and August 31, 2012, giving it an interest in "all accounts including accounts receivables, contract rights, and compensation arising from all existing and future agreements by and between the City of Galveston, Texas and

Consolidated Concepts, Inc. . . . . pursuant to RFP #10-11-003." CCI Housing points out that the IRS tax lien was not filed with the Texas Secretary of State until September 6, 2013, at the earliest. As summary judgment evidence, CCI Housing relies on payment documentation produced by the City of Galveston showing that $ 305,656.48 of the interpleaded funds were designated by the City as being paid out "pursuant to RFP 003." (Dkt. 102, pg. 14).

CCI Housing's arguments rest on two primary contentions: (1) that all of the interpleaded funds meet the definition of "accounts" under Texas law and its security instruments, and (2) that the summary judgment evidence shows at at least $ 305,656.48 of the interpleaded funds were designated by the City as being owed to Consolidated Concepts under the RFP mentioned in the security instruments. CCI Housing's first point relies on Texas Business and Commerce Code § 9.102(a)(2)(ii), which defines "account" as "a right to payment of a monetary obligation, whether or not earned by performance, . . . for services rendered or to be rendered." The second relies on the City of Galveston's produced checks and documents, and the heroic but ultimately unsuccessful efforts of CCI Housing's attorney to synthesize the documents and show that each of these checks and invoices create a string of evidence that ties into some part of the interpleaded funds.[3] Reviewing the documents submitted as summary judgment evidence, the Court finds that CCI Housing has not carried its burden of raising a genuine dispute of material fact as to whether these checks and job numbers did, in fact, tie back into the funds that were

---

[3] The United States objects to CCI Housing's summary judgment evidence with respect to this exhibit, and the Court sustains that objection. *See* Dkt. 113.

interpleaded and to its own security interest. As even CCI Housing admits, the City of Galveston's records are conflicting and confusing, and most importantly, the designation of RFP #10-11-003 does not appear on consistently in the supporting original documents or invoices.[4] Further, there is no acknowledgement or accounting by CCI Housing of the undisputed fact that most of the City's checks were jointly payable to Consolidated Concepts and various subcontractors.[5] Accordingly, an undetermined portion of these checks and the total amount cannot be considered part of the "account" of Consolidated Concepts as that term is used in the documents relied upon by CCI Housing. While it is possible that an unknown portion of some of the interpleaded funds may have been intended for Consolidated Concepts as payment for some work it performed in Galveston, CCI Housing has not provided sufficient summary judgment evidence to show that these funds are should be considered an "account," as that term is used in the filings it relies upon.

Accordingly, the Court finds that the United States is entitled to summary judgment in its favor that its claim has priority over CCI Housing.

---

[4] One example, among many, is "Check Number 14." According to CCI Housing, on April 17, 2013, this check was made payable to Consolidated Concepts and its subcontractor, Gulf Coast Builders, in the amount of $ 1090. CCI Housing argues that this check should be considered to be part of the "account" (*i.e.,* a right to payment for services) of Consolidated Concepts, for the reason that its attorney states that "[a]mount [is] confirmed relating to 003." But there is no notation on the supporting original documentation to show that this work was done pursuant to "RFP #10-11-003."

[5] Again, Check Number 14 is illustrative. It is made out to both Consolidated Concepts and to Gulf Coast Builders. In Texas, delivery of a check made jointly payable one nonalternative copayee without the endorsement of the other does not constitute "payment" and "it does not discharge the drawer of either his liability on the instrument or his underlying obligation." *McAllen Hosps., L.P. v. State Farm County Mut. Ins. Co. of Texas*, 433 S.W.3d 535, 540 (Tex. 2014).

### B. Texas Bonding

Next, the Court turns to Texas Bonding's claims. Texas Bonding contends that it issued numerous bonds to Consolidated Concepts, a large number of which were for projects in Galveston. Texas Bonding also points to an Indemnity Agreement signed by Don E. Leach, III and Liesa Leach, and a security instrument it filed regarding the Indemnity Agreement on February 28, 2012. Under the Indemnity Agreement, Consolidated Concepts assigned, as security for its bonds, "all right, title and interest . . . in, to or arising in any manner out of any Contract including, without limitation, the right to receive progress payments, payments on claims, changes or allowances, retained sums or any and all other monies due or to become due in any manner from any Contract." (Dkt. 98-1). Under that Agreement, Texas Bonding agreed to issue bonds and pay claims on those bonds, and Consolidated Concepts agreed to then pay Texas Bonding back, deliver collateral, or both. The Agreement also referred to an itemized statement that Texas Bonding would issue to Consolidated Concepts "in the event of any payment by the Surety."

Texas Bonding's motion generally asserts that it has sustained "losses" under two bonds that it issued to Consolidated Concepts for projects performed for "DCK-TTEC, LLC." However, there is evidence in the summary judgment record to show that these projects were performed in Arizona—not Texas. There is no explanation of how these projects relate to the City of Galveston, nor is there any explanation of when these claims were incurred or paid by Texas Bonding. Texas Bonding's allegations, although ostensibly supported by an expert affidavit, are conclusory and self-serving and are not

competent summary judgment evidence in a case such as this. *See, e.g., Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (noting, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'").

Similarly, Texas Bonding alleges that it has been sued by an entity known as "All Points Environmental, LLC" to recover on several of the bonds that it issued for Consolidated Concept's work in the City, but there is no statement of the amount actually paid by Texas Bonding. Finally, Texas Bonding lists several bonds on which it claims to have incurred "loss adjustment expenses" and "subrogation expenses." Again, however, there is no evidence of an itemized statement of loss that was sent to Consolidated Concepts.

Accordingly, the Court finds that the summary judgment should be granted for the United States on Texas Bonding's claims.

### C. The Materialmen and Subcontractors

Finally, the Court turns to the materialmen and subcontractors' claims. These entities rely on the Texas Construction Trust Fund Act—"Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state . . . [and a] contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." TEX. PROP. CODE ANN. §§ 162.001(a), 162.002.

Although the Court is sympathetic to the claims made under the Texas Construction Trust Fund Act, the Court finds guidance in the decision from the Fourteenth Court of Appeals in *Park Environmental Equiptment, Ltd. v. Texas Capital Funding*, 102 S.W.3d 243, 244–45 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). In that case, the Court of Appeals examined whether an entity who had purchased the accounts receivable of a subcontractor on a construction project then "stepped into the shoes" of that subcontractor for purposes of the Act. The Court of Appeals held, after closely analyzing the statute, that "the explicit words of the statute [did] not apply." *Id*. at 245.

Here, as in *Park Environmental*, there is no evidence that the City of Galveston was "either one of the entities ('contractor, subcontractor, or owner') [or] one of the agents ('officer, director, or agent') listed in the statute." *Id*. Further, there is no evidence that the "payments" at issue were, in fact, "made" to Consolidated Concepts—in fact, this is the very crux of the problem that gave rise to the City of Galveston's interpleader action. *See, e.g., McAllen Hosps., L.P. v. State Farm County Mut. Ins. Co. of Texas*, 433 S.W.3d 535, 540 (Tex. 2014) (delivery of a check made jointly payable one nonalternative copayee without the endorsement of the other does not constitute "payment," and "it does not discharge the drawer of either his liability on the instrument or his underlying obligation.").

While the statute is remedial, and should be broadly construed, this Court is not free to re-write it and must instead adhere to the language presented. *See, e.g., In re Heritage Consol., L.L.C.*, 765 F.3d 507, 518 (5th Cir. 2014) (noting, "[t]he Trust Fund

Act imposes fiduciary responsibilities on *contractors* to ensure that Texas subcontractors, mechanics, and materialmen are paid for work completed," finding drilling contractors did not have a claim against parties who were neither contractors nor officers) (emphasis in original). Accordingly, the Court finds that the United States is entitled to summary judgment that its claims are superior to those asserted by the materialmen and subcontractors in this case.

## CONCLUSION

After considering the motions, the briefing and arguments of the parties, and the record of the case as a whole, the Court finds that summary judgment should be **GRANTED** in favor of the United States.

Accordingly, the United States of America's Motion for Summary Judgment, Dkt. 99, is **GRANTED**.

It is therefore **ORDERED** that the United States is entitled to the entire $700,684.94 in funds interpleaded by the City of Galveston, plus interest that has since accrued, if any.

Further, Ideal Lumber Company's Motion for Summary Judgment, Dkt. 95, is **DENIED**.

Solar Supply, Inc.'s Motion for Summary Judgment, Dkt. 96, is **DENIED**.

Elevators of Texas' Motion for Summary Judgment, Dkt. 97, is **DENIED**.

Texas Bonding Company's Motion for Summary Judgment, Dkt. 98, is **DENIED**.

CCI Housing's Motion for Summary Judgment, Dkt. 101, is **DENIED**.

SIGNED at Galveston, Texas, this 31st day of March, 2017.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge